UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JENNIFER P. SCHWEICKERT,<br><br>Plaintiff,<br><br>v.<br><br>HUNTS POINT VENTURES, INC; HUNTS POINT VENTURE GROUP, LLC; CHAD RUDKIN and ELIZABETH RUDKIN, and their marital community comprised thereof; JOHN DU WORS and AMBER DU WORS, and their marital community comprised thereof; and DOES 1-4;<br><br>Defendants. | Case Number: 2:13-CV-00675-RSM<br><br>PLAINTIFF JENNIFER SCHWEICKERT'S OPPOSITION TO DEFENDANT CHAD RUDKIN'S AND ELIZABETH RUDKIN'S MOTION FOR JUDGMENT ON THE PLEADINGS AND/OR PARTIAL SUMMARY JUDGMENT<br><br>Noted for Hearing: February 28, 2014 |

Plaintiff, Jennifer Schweickert, respectfully submits the following points and authorities in opposition to defendants Rudkins motion for judgment on the pleadings and/or partial summary judgment.

Plaintiff has submitted a motion to amend the complaint in this matter that is noted for February 28, 2014. The amended complaint incorporates new facts learned by plaintiff in the ongoing litigation involving Hunts Point Ventures (herienafter, "HPV") both in this case and the Philipps v. Rudkin, King County Superior Ct. Case #13-2-07233-5 SEA noted by defendants.

**Opposition** — 1
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

*See* Def.'s Motion, p. 6.  Plaintiff has learned all of these facts of her own accord despite serving

defendants with interrogatories and requests for production served on November 7, 2013.

Defendants then moved to appoint a receiver of HPV on November 25, 2013, which resulted in a

60 day automatic stay.  Defendants responses were due January 27, 2014 after which counsel for

defendants opined that plaintiff was not "entitled" to discovery because he filed a motion to

dismiss.  Plaintiff has also filed a motion to compel discovery against defendants in this matter,

noted for February 28, 2014.  Plaintiff is troubled by the attempt of the defendants to avoid their

obligations to respond to discovery, responses that would allow plaintiff to develop her case for

trial.  Defendants are attempting to benefit from their own malfeasance and violating the spirit

and obligations imposed by the FRCP.

Despite the stonewalling by defendants, taking either the underlying facts in this

complaint or the newly discovered facts as noted in plaintiff's proposed second amended

complaint, these facts are sufficient to meet the plausibility requirement to defend a motion to

dismiss.  Based upon the factual allegations known to plaintiff at the time the complaint was

filed, plaintiff pleaded two causes of action that defendants now attack: breach of contract and

conspiracy to commit fraud.  As discussed infra, the facts, when viewed liberally and when taken

as true, are sufficient to meet the plausibiltiy standard that: a) the Rudkins were managers prior

to the time plaintiff entered the contract, and that due to their self-dealing conduct, they could be

held liable if the court were to disregard the corporate form; and b) the set of facts pleaded in

detail with respect to their co-conspirator, defendant John Du Wors, supports a plausible

conspiracy to commit fraud to extinguish plaintiff's interest and give priority to their mother's

loan.

---

**Opposition — 2**
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

Beyond this, plaintiff would note that any attempt at discovery in this matter has been thwarted by defendants.  Had plaintiff been able to conduct discovery when initiated in November, 2013, she would have amended her complaint already.  As demonstrated in the contemparoneous motion to compel discovery against defendants, plaintiff has been deprived of discovery to develop additional facts based upon these allegations.  These facts are relevant for multiple reasons.  First, those facts are probative of the allegations raised in her complaint and were provided in response to discovery requests to the receivership of HPV instituted by defendants.  Second, the facts only go to lend further credence to the allegations in her complaint which, had she known them previously, would have been already pleaded in her complaint.  This makes defendants' motion to dismiss brought in bad faith, as it was filed both with an intent to continue delaying discovery and *after* defendants had produced some discovery to the receiver, the knowledge of which facts defendants would have known support plaintiff's causes of action in this complaint.

## I.   In Ruling On A Motion For Judgment On The Pleadings Under FRCP 12(c), The Court Must Accept As True All Allegations Contained In The Complaint

In ruling on a motion for judgment on the pleadings, the moving party must clearly demonstrate to the court that there is no possibility of recovery under the allegations of the complaint.  As this opposition will clearly demonstrate, the Rudkins have both undertaken specific steps and actions that, at a minimum, require a determination by the fact finder, as the allegations in the complaint do contain a possibility of recovery.  Defendants have filed this dispositive motion at the same time that their counsel requested a discovery conference to be scheduled on plaintiff's outstanding discovery requests.  *See* Plaintiff's Motion to Compel filed Feb. 13, 2014.  Defendants appear to be using this motion as a basis to refuse to be responsive to

**Opposition — 3**
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

1  plaintiff's discovery requests.  A motion for judgment on the pleadings and partial summary

2  judgment, filed concurrently with a refusal to provide responses to interrogatories and a notice to

3  produce, is premature, brought in bad faith, and must be denied.

### A. Applicable Standard

In ruling on a motion for judgment on the pleadings under Federal Rules of Civil

Procedure, Rule 12(c), the court must accept as true all factual allegations in the complaint.  *See*

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  In essence, a motion

for judgment on the pleadings is similar to a FRCP Rule 12(b)(6) motion to dismiss and adopts

the same evidentiary standard.  The seminal cases discussing Rule 12(b)(6) motions from the

United States Supreme Court are *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 127 S.Ct.

1955 and *Ashcroft v. Iqbal* (2009) 556 US 662, 129 S.Ct. 1937.  The Supreme Court held that the

trial court need not accept the "labels" or "summations" of the complaint, but the point of the

two cases is that all factual allegations in the complaint must be accepted as true.  *Twombly*, 127

S.Ct. at 1965 (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986); *see also*

*Rescuecom Corp. v. Google Inc.*, 562 F3d 123, 127 (2nd Cir. 2009) (holding that the court must

"accept as true all of the allegations set out in plaintiff's complaint, draw inferences from those

allegations in the light most favorable to plaintiff, and construe the complaint liberally.")

A complaint is sufficient if it gives a defendant "fair notice of what the … claim is and

the grounds upon which it rests."  *Twombly*, 127 S.Ct. at 1964.

> Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of
> a complaint's factual allegations. … The sole issue raised by a Rule 12(b)(6)
> motion is whether the facts pleaded would, if established, support a plausible
> claim for relief.  Thus no matter how improbable the facts alleged are, they must
> be accepted as true for the purposes of the motion. … Subject to the "plausibility"
> requirement, a well-pleaded complaint may proceed even if it strikes a savvy

---

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

judge that actual proof of those facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Twombly*, 550 U.S. at 556). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that *discovery will reveal evidence of*" the necessary element. *Id.* (emphasis added).

The purpose of pleadings is to "facilitate a proper decision on the merits" and not to erect formal and burdensome impediments to the litigation process. *Conley v. Gibson*, 355 U.S. 41, 48, 2 L.Ed.2d 80, 78 S.Ct. 99 (1957). FRCP 15 "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316, 5 L.Ed.2d 8, 81 S.Ct. 13 (1960). Where a complaint or claim is dismissed, leave to amend generally is granted, unless further amendment would be futile. *Chase v. Fleet/Skybox Int'l*, 300 F.3d 1083, 1087-88 (9th Cir. 2002). Courts are free to grant a party leave to amend whenever "justice so requires," Fed.R.Civ.P. 15(a)(2), and requests for leave should be granted with "extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001) (*quoting Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)). "'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir.2002) (*quoting Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991)).

---

**Opposition** — 5
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

**B.  Request for Judicial Notice**

There are two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion.  First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 453 (1994).  If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998).

Second, Federal Rule of Evidence 201 allows a court to take judicial notice of an adjudicative fact "not subject to reaosnbale dispute" because it can be "accurately and readily determiend from sources whose accuracy cannot reasonably be question."  Fed.R.Evid. 201(b).  In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  Rule 12(b)(6) expressly provides that when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.  Fed. R. Civ. P. 12(b)(6).  However, it is well established that a court may take judicial notice of facts outside the pleadings that are not subject to reasonable dispute when reviewing a motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F. 3d 668, 689 (9th Cir. 2001) (taking judicial notice of other court proceedings and opinions); *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (taking judicial notice of previously filed declarations); and *Nucal Foods Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984-5 (E.D. Cal.

**Opposition** — 6
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

2012) (taking judicial notice of pleadings and affidavits filed in state court proceedings).

"Judicial notice is used to supplant authentication of 'adjudicative facts' – 'simply the facts of

the particular case.'  Fed.R.Evid. 201, Advisory Committee Notes.

Based on the above authority, plaintiff requests judicial notice of the facts noted in this

opposition from the following documents as not being in reasonable dispute:

(1) The declaration of Stephen Schweickert filed on December 20, 2013; Exhibit "A" to
Declaration of Reed Yurchak.

(2) Complaint of Joyce Schweickert v. Chad and Elizabeht Rudkin, Douglas and Jane
Doe Lower, John Du Wors and Jane Doe Du Wors, Newman & Newman, Attorneys
at Law, LLP Case No 13-2-42758-3 SEA. Exhibit "B" to Declaration of Reed
Yurchak.

(3) Complaint of Joyce Schwieckert v. Hunts Point Ventures, Inc. Case No. 13-2-42759-
1 SEA, Exhibit "C" to Declaration of Reed Yurchak.

## II.  Pursuant to FRCP 12(c), Plaintiff's Claims Against The Rudkins Do Not Fail As A Matter of Law

First, Defendants have spent an inordinate amount of time in their moving papers

discussing Mark Phillips.  This lawsuit has nothing to do with Mark Phillips, nor is Mark Phillips

or his past relevant to any issue in this lawsuit.  This is a case of fraud, conspiracy, interference

with contractual relations and breach of contract; there is no "larger conspiracy" that implicates

Mark Phillips, as defendants allege.  At the time of her loan to HPV, plaintiff had the same

connection to Mark Phillips as the defendants; they were life-long friends.  Plaintiff was

motivated to loan HPV money, in part, to help Mark Phillips.  Defendant Chad Rudkin was

involved in HPV, in part, because of his friendship and his desire to help Mark Phillips.  Where

plaintiff differs from the defendants is stark.  She never breached a fiduciary duty owed to Mark

Phillips, she never stole Mark Phillips' property and goods, and she never conspired to avoid a

**Opposition — 7**
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

financial obligation to another, life-long friend.  To review defendants' moving papers, you would conclude that it was mere chance that led the defendants to be the subject of this lawsuit, as if they were picked at random.  But a review of the evidence clearly demonstrates that the defendants are targeted because they have breached duties and obligations owed not only to plaintiff, but to the corporation, to other shareholders, and to third parties.  The have been sued because of their own malfeasance, not a part of a greater conspiracy.

Second, even though defendants have improperly refused to provide responses to discovery, plaintiff has been able to discover additional facts regarding the actions of defendants that will bolster those factual allegations found in the complaint.  Attached to this opposition is plaintiff's statement of disputed and undisputed facts gathered from the evidence available to her at this time (in spite of the bad faith of the moving defendants), that clearly demonstrate that there is a great plausibility of recovery against these defendants.

Defendant Chad Rudkin was involved in HPV from its inception, was acting as an officer of HPV from its inception.  Furthermore, contrary to the misleading statements in the moving papers, Chad Rudkin was an owner and shareholder of HPV in January 2011, at least three months before plaintiff entered into the Promissory Note and Joint Participation Agreement with HPV.  The moving papers, however, <u>falsely claim</u> that the defendants were not "owners" of HPV until after the April 2011 loan to HPV on the basis that the complaint states that the Rudkins did not assume control of HPV until 2012.  *See* Def.'s Motion, p. 5, 7, 13.  This is misleading for two reasons.  First, as defendants cite in their motion, their interpretation of when the Rudkins assumed control is based upon the statement "Defendants the Rudkins actively participated in the conspiracy after gaining control of HPV in 2012…."  *See Plaintiff's Amended Complaint*, p. 16, ¶ 54.  Defendants omit the context of this statement in plaintiff's complaint.  'Gaining control'

---

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

refers to when the Rudkins eliminated all other shareholders, including Stephen Schweickert and

Mark Phillips, and consolidated complete control between themselves and their co-conspirator,

Mr. Du Wors, the de facto officer and director of HPV and HPVG.  This is, in fact, referenced in

the preceding paragraph 53 of plaintiff's complaint.  This does not mean that the Rudkins were

not previously involved in HPV.  Second, in so misconstruing this narrow reading of the

complaint, defendants intentionally are perpetrating a fraud upon the court in alleging facts they

know are false.

First, in HPV's corporate records, 'Joint Consent in Lieu of a Board Meeting,' it is

clearly stated that "[Chad] Rudkin became an owner 50% of the shares of Hunts Point Ventures,

Inc., effective January 1, 2011, and [has] shared equally in all operating decisions of the

corporation since that time." *See Declaration of Stephen Schweickert*, Exhibit "L."  The Joint

Consent is signed by both Chad Rudkin, as a shareholder, and Elizabeth Rudkin, as the treasurer.

In addition, Chad Rudkin was copied on all e-mails and communications with Stephen

Schweickert regarding the formation of HPV, HPIP, HPVG, between April 2010 through

January 2011, prior to plaintiff's loan to HPV.  *See Declaration of Stephen Schweickert*, Exhibits

"L, C, F, H, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, and 29."  Stephen Schweickert

told John Du Wors on June 11, 2010, that "Chad was vice president of hunts point ventures."

*See Declaration of Stephen Schweickert,* Exhibit "22."  Chad Rudkin was copied on the email

transmitting the promissory note between Sandy Hoover and HPV, sent by Stephen Schweickert,

dated October 2010.  Chad Rudkin was involved in negotiating the Hoover promissory note with

HPV, meeting with her at her home in October 2010.  Chad Rudkin was a shareholder, officer

and manager of HPV, while the parties were preparing the dissolution of Joyce Schweickert's

ownership in HPV, a document authored by attorney, de facto officer and director of HPV and

**Opposition — 9**
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

LAW OFFICE OF REED YURCHAK
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

HPVG, John Du Wors, and executed on February 8, 2011, which document was backdated to December 31, 2010.  Chad and Elizabeth Rudkin ratified this action in their May 2012 HPV board resolution.   *See* Complaint of Joyce Schweickert v. Hunts Point Ventures, Inc. and Joyce Schweickert v. Rudkin et. al.

Second, counsel for defendants filed Initial Disclosures on November 25, 2013, wherein he acknowledged having the "Formation documents for Hunts Point Ventures, Inc." and Corporate resolutions, notices, and annual minutes of Hunts Point Ventures, Inc."  *See* Exhibit "D," (p. 4, items 2 and 4), Declaration of Reed Yurchak.  Well prior to making this motion and well prior to blocking plaintiff's discovery demands, counsel for defendants knew he had an obligation to the court and plaintiff to disclose this information.  Only by virtue of the fact that plaintiff "discovered" this information from the filing of a declaration by Stephen Schweickert, the former officer of HPV, did she acquire this information.  Defendants did not choose to disclose these corporate documents to the receiver.

The mis-categorization of plaintiff's loan is important because it impacts the obligations and duties owed by HPV and the Rudkins to plaintiff.   Plaintiff alleges in her complaint a breach of contract on her promissory note with HPV both against HPV and the Rudkins.  Case law does support imputing liability for a corporate contract to a stockholder in instances where there exists an "adequate reason," i.e., "public advantage, requirements of justice, alter ego, fraud, bad faith, or other wrong."  *Harrison v. Puga*, 4 Wn. App 52, 62 (1971).  Defendants argue plaintiff's cause of action for breach of contract against the Rudkins must fail as a matter of law because she had no contract with the Rudkins and was not a shareholder in order to sue derivatively.  Both arguments fail for the following reasons.

**Opposition** — 10
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

### A. Plaintiff Has Presented Sufficient Facts to Support A Plausible Claim For Breach Of Contract Against The Rudkins Under The Doctrine Of Disregard Of the Corporate Entity

Frist, piercing the corporate veil is an equitable remedy and not a claim.  In *Truckweld Equipment Inc. v. Olson*, 26 Wn. App. 638 (1980), the court analyzed the doctrine of corporate disregard, holding as follows: "The doctrine of disregarding the corporate entity or piercing the corporate veil is an equitable remedy imposed to rectify an abuse of the corporate privilege.  *1 W. Fletcher, Cyclopedia of the Law of Private Corporations* § 41 *et seq.* (Rev. ed. 1974);  *Id.* at 643.

Furthermore, the remedy of corporate disregard must not be pleaded in order to be invoked.  In *Morgan Bros., Inc. v. Haskell Corp., Inc.,* 24 Wn. App. 773 (1979) the court upheld a finding of corporate disregard in a case wherein the remedy was not pleaded:

> Hanson's Inc. argues that the trial should not have commenced because disregarding the corporate entity had not been pleaded, or, at the very least, there should have been a continuance to allow it the opportunity to prepare a defense to the new theory.  CR 15(b) provides in part: If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.  *Id.* at 780.

The court observed that this lies within the sound discretion of the court.  *Id.*  Plaintiff, nonetheless, has pleaded this as a new cause of action in her second amended complaint.

There are a number of exceptions to the personal liability shield that a corporation traditionally offers its shareholders and officers.  In the instant case, there a triable issue of fact as to whether the defendants' conduct complied with their obligations under RCW 23B.08.710(2)(a) and RCW 23B.08.300(2)(b) and whether the court may order corporate disregard in this case.  The courts in Washington have identified specific instances when the

**Opposition** — 11
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

court may disregard the corporation to impose personal liability upon the shareholders and officers.

### i.         Knowing Participation

The court may disregard the corporate entity when the shareholder "knowingly participate" in a scheme.  In *Johnson v. Harrigan Peach*, 79 Wn. 2d 745, 489 P2d 923 (1971), misrepresentations and breaches of warranties regarding a residential real estate development led to personal liability for the owner/officer of company.  An officer who takes no part in a tort committed by a corporation, is not liable, unless he "knowingly participated in, cooperated in the doing of, or directed that the acts be done." *Id.* at 753.  "Close control" over the direction and management of the company, can be a basis for inferring that the officer had knowledge of fraudulent conduct: "if they exercise such close control, direction and management of the corporation that the law as a matter of elemental justice ought to charge them with the knowledge of such fraud." *Id.* at 754; *see also, State of Washington v. Ralph Williams NW Chrysler*, 87 Wn. 2d 298, 553 P.2d 423 (1976); *Grayson v. Nordic Construction*, 92 Wn. 2d 548, 599 P.2d 1271 (1979).  In the instant case, defendants knowingly participated in a scheme that may or may not include the improper transfer of shares, the mis-characterization of plaintiff's loan, the improper grant of a "secured" interest to defendant's mother, and other acts outlined above.

### ii.        Intentional Use To Violate Or Evade A Duty

The court may likewise disregard the corporate entity where the shareholder uses the corporation to evade a duty.  In *Norhawk Investments, Inc. v. Subway Sandwich Shops, Inc.*, 61 Wn. App. 395, 811 P.2d 221 (1991), the court held that a two-part analysis to determine whether to disregard corporate entity: (1) the corporate form was "*intentionally* used to violate or evade a

---

**Opposition** — 12
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

duty," and (2) disregard is "*necessary and required* to prevent unjustified loss to the injured party." *Id.*, at 398-399.

In *Meisel v. M&N Modern Hydraulic Press Company*, 97 Wn. 2d 403, 410, 645 P.2d 689 (1982), the court noted that the first step typically involves "fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment." This element requires proof of "an abuse of corporate form" to the abuser's benefit and to the innocent party's detriment.  In determining whether the corporate form is being abused, the court considers whether the corporate formalities are being followed or used as an alter ego for the stockholder.  *Grayson v. Nordic Construction*, 92 Wn. 2d 548, 553 (1979).  The second step requires the establishment of a causal link between the intentional misconduct and the harm which the disregard seeks to relieve.  *Meisel v. M&N Modern Hydraulic Press Company*, 97 Wn. 2d 403, 410.  In other words, the "wrongful corporate activities must actually harm the party seeking relief so that disregard [of the corporate form] is necessary." *Id.*; *see also*, *Morgan v. Burks*, 93 Wn. 2d 580, 611 P.2d 751 (1980) for a discussion of what constitutes an "unjustified loss" warranting piercing the corporate veil.  In the instant case, defendants removed other potential shareholders, and then attempted to use the corporate shield to evade the duty to repay plaintiff and loot the corporate assets.  In the case at bar, defendants removed other potential shareholders and then attempted to use the corporate shield to evade the duty to repay plaintiff. The defendants also employed HPVG solely to evade the duty to provide shares under contract to plaintiff, defendants never conducted board meetings, entered into any contracts, or maintained HPVG in good standing after plaintiff invested money into HPV, including putting into place the profit sharing agreement plaintiff relied on her investment.

   **iii.   Commingling Assets**

Finally, the court may disregard the corporate entity where the assets have been

commingled.  In *McCombs Constr. v. Barnes*, 32 Wn. App. 70, 645 P.2d 1131 (1982), a

corporate officer used company funds to pay for a personal residence, then defaulted on amounts

owing to a contractor.  When there is such commingling between the principals and the

corporation that separateness ceases to exist, courts have pierced the corporate veil and imposed

personal liability on the commingling shareholder.  *Id.* at 76.   The instant cases poses a novel

question, the assets of HPV were commingled with the trust account of attorney and de facto

officer and director of HPV and HPVG, John Du Wors, and payments made on behalf of HPV

came directly from Mr. Du Wors' IOTLA account.  It is reasonable to conclude that this

"commingling" was done in anticipation of anticipated settlement awards which would allow

defendants and Mr. Du Wors to more easily avoid HPV's obligation to repay plaintiff.  The same

may be said of the assets of HPV and HPVG: indeed, it is unclear what HPVG's assets or rights

are; HPV's rights are from representations of defendants;  and HPVG's manager, according to

the Secretary of State, is the entity HPV.  *See* Exhibit "E" p. 8 to Declaration of Reed Yurchak.

In the case at bar, Chad Rudkin was a shareholder of HPV at the time plaintiff entered

into the agreement, and at the time demand was made for performance on the note, the only

"identified" shareholders were defendants Chad and Elizabeth Rudkin.  The defendants are liable

for breach of the contract if the corporate veil is disregarded.  As plaintiff demonstrates,

defendants have acted with bad faith, in their own self-interest, and used the corporate form to

evade a duty owed to plaintiff.  The court should disregard the corporate protections offered by

the structure and impose personal liability upon the defendants.  The entire conspiracy to

eliminate all shareholders in HPV, coupled with the re-categorization of plaintiff's loan, was

**Opposition** — 14
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

1
2

done solely for the personal benefit of the defendants and to subordinate any rightful claim to the

assets of HPV, the Phillips' IP, to the Rudkins' control through their mother, Sandy Hoover.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Last, although not pleaded in the first amended complaint, the complaint does contain

sufficient notice of a plausible claim for interference with contractual rights against the

defendants.  A party need not plead specific legal theories in the complaint, so long as the other

side receives notice as to what is at issue in the case.  *See Oglala Sioux Tribe v. Andrus*, 603 F.2d

707, 714 (8th Cir. 1979); *see generally 2A Moore's Federal Practice*, ¶ 8.14 at 8-131 to 8-136;

*see also Fontana v. Haskin*, 262 F. 3d 871 (9th Cir, 2001); *American Timber & Trading v. First*

*Nat. Bank of Or.*, 690 F. 2d 781, 786 (9th Cir, 1982) (holding that although the "compensating

balances claim" was not expressly spelled out in the original complaint, there was no error in

ruling that this issue was adequatley presented because the complaint sought recovery for all

usurious interest, and is to be liberally construed under the Federal Rules).   Nevertheless,

plaintiff's second amended complaint does clarify this as a cause of action.  Leave to amend

should be granted liberally, and this motion, when read in conjunction with plaintiff's motion to

amend and to compel defendants to respond to discovery, demonstrates why plaintiff should be

allowed to amend at any point in time she acquires newly discovered facts.

20
21
22
23
24

Defendants were aware of the obligation of HPV to repay plaintiff's loan in October 31,

2012.  As plaintiff has since discovered and was documented in Elizabeth Rudkin's HPV

corporate notes 2012, defendants were hopeful that a settlement of one of the claims for violation

of the Phillips' IP would provide HPV with cash; cash they were determined to keep for

25
26
27
28

---

**Opposition** — 15
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

LAW OFFICE OF REED YURCHAK
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

themselves.  *See* Exhibit "F" to Declaration of Reed Yurchak.[2]  They conspired with John Du

Wors and Stephen Schweickert to remove Doug Lower, Mark Phillips and Joyce Schweickert as

shareholders of HPV.  They also began the plan to mis-characterize plaintiff's loan, thereby

subordinating it to the "secured" loan of Ms. Hoover, Elizabeth Rudkin's mother.  Had they not

mis-characterized plaintiff's loan and a settlement was achieved, then HPV would have been

obligated to make the payments to Jennifer Schweickert.  As the allegations make clear, there is

nothing "innocent" in the mis-characterization of plaintiff's loan.  The participation of additional

persons was required to breach the contract and interfere with plaintiff's contractual rights.

Defendants not only agreed to a "plan" to interfere with plaintiff's contractual rights, but they

documented some of the steps necessary in order to subordinate any claim that plaintiff may

have against the assets of HPV.

### B. Plaintiff Has Presented Sufficient Facts to Support A Plausible Claim For Civil Conspiracy To Commit Fraud and to Interfere With Contractual Rights.

The complaint contains clear allegations of fraud against the defendants as well as

interference with plaintiff's contractual rights.  In asserting a claim for conspiracy, a complaint

need only plead the "possibility" of a recovery on an "underlying claim."  *Nw. Laborers-*

*Employers Health & Sec. Trust Fund v. Philip Morris, Inc.,* 58 F. Supp. 2d 1211, 1216 (W.D.

Wash. 1999).  A valid, underlying claim supports the allegations of a conspiracy.  *Gossen v.*

*JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1171 (W.D. Wash. 2011).  More importantly,

plaintiff is not required to "prove" the allegations in the complaint in the pleading state; for this

---

[2] These notes are introduced as an exhibit herein as relatable to Plaintiff's summary judgment portion of the motion, in that the FRCP 12(c) and 56 motions intermix similar issues as to the status of plaintiff's relationship in HPV and the obligations due to her.

---

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

1

2

reason the courts accept as true all allegations in the complaint.  See, *Rescuecom v. Google,*
supra.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

Plaintiff's complaint contains allegations of fraud against the defendants.  Defendant
Chad Rudkin was a shareholder of HPV at the time of plaintiff's loan, and participated in and
approved the representations contained in the Promissory Note and Joint Participation
Agreement.  The complaint also contains clear allegations of the further promises made to
plaintiff by defendant Chad Rudkin regarding her loan to HPV: that Mark Phillips would always
be an officer and shareholder of HPV; that plaintiff would participate in the "profit-sharing"
between HPV and HPVG; and that plaintiff would be a shareholder of HPVG.  Chad Rudkin also
personally emailed plaintiff about her attendance at an HPV shareholder's meeting.  When
plaintiff declined to attend, as the complaint alleges, the defendants and their conspirators sought
to "provide plaintiff with enough false promises to induce her to invest in HPV."  *See* Plaintiff's
Amended Complaint at ¶ 16, 17.  Chad Rudkin offered her the opportunity to attend by
telephone.  All of these actions and representations were to induce conduct by plaintiff and to
make her believe that she was, in fact, a shareholder of HPV.

19

20

21

22

23

24

25

26

27

The alleged fraud against defendant Elizabeth Rudkin is equally as clear.  She was
instrumental in re-categorizing plaintiff's loan and attempting to subordinate all other creditors in
favor of her mother.  Defendants' argument that the defendants cannot be liable for the
"mischaracterization" of plaintiff's loan as a matter of law is counter-intuitive and not supported
by well-settled law.  Defendants mistakenly cite RCW § 23B.08.300(2)(b) to support their
position, which protects directors who rely on the reports or opinions prepared by experts.  It
does not provide cover for directors **who are actively involved in falsifying those reports**.
More importantly, plaintiff's discovery of defendant Elizabeth Rudkin's notes rebut any claim to

28

**Opposition** — 17
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

LAW OFFICE OF REED YURCHAK
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

"innocence" that defendants have asserted in their motion as the notes clearly show that

Elizabeth was actively involved in the efforts of the conspirators to interfere with plaintiff's

contractual rights by "mis-characterizing" plaintiff's loan and by subordinating that loan with a

sham, "secured" loan from her mother.  As the complaint alleges:

> Defendants the Rudkins actively participated in the conspiracy after gaining
> control of HPV in 2012 by assuring plaintiff that her loan would be repaid, that
> HPV would generate money via the Phillips IP, and sending plaintiff notices
> prepared by Mr. Du Wors identifying plaintiff as a shareholder of HPV.  An
> example of defendant Mrs. Rudkin's knowledge of the conspiracy can be found in
> a memorandum regarding an HPV shareholders' meeting, a true and correct copy
> is attached hereto as Exhibit "E."  As further evidence of the Rudkins conspiracy
> to defraud plaintiff of her loan, they instructed Sandy Hoover, Elizabeth Rudkin's
> mother, and Chad Rudkin's mother-in-law, to create a security interest against the
> Phillips IP for her $100,000.00 investment in HPV and deny plaintiff was owed
> anything."  *Plaintiff's First Amended Complaint*, p. 15.

Having asserted plausible claims for fraud and interference with contractual rights against

the defendants, the complaint need only outline the intent of the conspiracy as well as the

participants to the conspiracy.  *Gossen v. JP Morgan Chase Bank*, supra.  The complaint

contains allegations of the members of the conspiracy (defendants, Mr. Schweickert, and Mr. Du

Wors), as well as the aim of the conspiracy ("to induce plaintiff to loan HPV money" and to

"mischaracterize plaintiff's loan so that they could keep her money.")  Additionally, the

complaint sets for the means by which the defendants were able to commit fraud against the

plaintiff as well as interfere with her contractual rights.  The complaint alleges that the

participation of the defendants was integral to the conspiracy to commit fraud and to interfere

with plaintiff's contractual rights.  Chad Rudkin was an owner and director of HPV at the time

plaintiff loaned the money to HPV and participated in and approved the representations made to

plaintiff.  Elizabeth Rudkin was in charge of the books, and actively worked to not only mi-

characterized plaintiff's loan, but also sought ways to "subordinate" plaintiff's claim to prevent

**Opposition** — 18
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

LAW OFFICE OF REED YURCHAK
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

her from increasing her ownership interest in HPV. Finally, the complaint alleges the goal of the conspiracy was to get plaintiff's money and keep the money for themselves. The complaint contains plausible claims of conspiracy to commit fraud and conspiracy to interfere with plaintiff's contractual rights.

### III. Plaintiff Has Not Attempted To File Derivative Claims, Although Her Confusion Would Be Understandable.

Defendants style part of its motion as a FRCP 56 summary judgment motion with respect to the breach of contract claims against the Rudkins on the issue of whether plaintiff can properly sue them derivatively. Given that defendants introduce extrinsic evidence in the form of plaintiff's proof of claim, *see* Defendants' Motion, p. 16, they have arguably opened the door to all extrinsic evidence with respect to this issue.

On review of a summary judgment, this court must decide whether the affidavits, facts, and record have created an issue of fact and, if so, whether such issue of fact is material to the cause of action. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). Therefore, the adverse party must set forth specific facts showing there is a genuine issue for trial or have the summary judgment, if appropriate, entered against them. CR 56(e); *see also LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). In reviewing summary judgment orders, the court considers supporting affidavits and other admissible evidence that is based on the affiant's personal knowledge CR 56(e); *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wash.2d 355, 359, 753 P.2d 517 (1988). CR 56(e) allows an attorney to base his or her affidavit on documents properly before the court, including documents already in the court files, as well as additional documents presented by the parties in a motion for summary judgment which are properly authenticated. The rule's requirement of authentication is met if the

---

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

proponent shows proof sufficient for a reasonable fact-finder to find in favor of authenticity.  The rule does not limit the type of evidence allowed to authenticate a document; it merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be.  *IUI v. St. Paul Fire & Marine Ins. Co*., 87 P. 3d 774, 781 (2004).  Documents produced by a defendant in response to plaintiff's discovery requests are admissible, even without authentication, and regardless of whether the documents were produced to another plaintiff.  *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F.Supp.2d 1053, 1062 n. 8 (C.D. Cal. 2003).  In addition, the court may continue a summary judgment hearing in order to permit discovery when a party is otherwise unable to present "facts essential to justify his opposition," and offers an explanation of why this inability exists.  *See* Fed. R.Civ.P. 56(f); *In re Silicon Graphics Inc. Securities Litigation.*, 183 F. 3d 970 - Court of Appeals, 9th Circuit 1999.  "Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery," *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986), and specifying "how [those facts] would preclude summary judgment," *Garrett v. City and County of S.F.*, 818 F.2d 1515, 1518 (9th Cir.1987).

In the instant case, moving defendants have not met their evidentiary burden of establishing the absence of genuine issues of material facts.  They have failed to rebut the large evidentiary indictment of the complaint.  Were defendants to have met their initial burden on the breach of contract or conspiracy claims, plaintiff will demonstrate that there exists genuine issues of material facts that will preclude the court from granting defendants' motion on that issue.

Plaintiff has not currently filed any derivative claims against HPV or the Rudkins, but one could understand the confusion of the defendants.  It is undisputed and clear that at some point someone at HPV believed that plaintiff was a shareholder of HPV.  It is undisputed that

plaintiff was sent a "Notice of Shareholder's Meeting" by the office of HPV's counsel, John Du

Wors. *See Plaintiff's Complaint*, Exhibit "E." At a minimum, there is an actual triable issue of

fact as to whether plaintiff is or was a shareholder of HPV. The actual equity ownership is one

of the issues that plaintiff has raised in her complaint. The ownership history of HPV is a

confusing, contradictory history that has resulted in multiple parties making a claim to ownership

in HPV. *See Declaration of Stephen Schweickert*, p. 6, ¶ 22 and Exhibit "F." Additionally, HPV

was contractually obligated to set up additional corporate entities that would have inter-corporate

agreements, some of which agreements were to benefit plaintiff.

Defendants' argument in their moving papers is confusing and irrelevant to the issues

raised in plaintiff's complaint. Defendants' confusion regarding the potential equity holding of

plaintiff is understandable; defendant Elizabeth Rudkin was directly involved in "categorizing"

plaintiff's loan to HPV as an "angel investment." Defendants' contention that this was

"harmless error" only highlights the futility of defendants' motion - it is an admission that there

is a triable issue as to whether the defendants "innocently" or "intentionally" mischaracterized

plaintiff's loan. Defendants try to minimize the importance of the act of mischaracterizing

plaintiff's loan because the impact is damning. Despite this mischaracterization, Elizabeth

Rudkin made clear in her HPV Corporate 2012 notes that she is trying to usurp prior note holders

and shareholders right to the assets of HPV, by creating a secured note by either emptying her

401k or borrowing the money with a security agreement with Sandy Hoover. Elizabeth sets forth

the pros and cons of the plan in her notes. If, as plaintiff alleges in the complaint, defendants'

acted intentionally, then plaintiff was harmed by the defendants' attempt not only to "prioritize"

Ms. Hoover's loan over plaintiff's, but also by removing completely the obligation of HPV to

repay the loan to plaintiff. This is important since at the time that Elizabeth mischaracterized

**Opposition** — 21
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

plaintiff's loan as an "investment," there was an indication from HPV counsel Mr. Du Wors that RIM was interested in effecting a settlement with HPV for a violation of the Phillips' IP.  If plaintiff was a shareholder instead of a creditor, defendants could more easily avoid the obligation of HPV to re-pay her loan.

The claim of "innocent mistake" is further disputed by the response given to plaintiff by Mr. Du Wors in a demand letter sent to both Mr. Du Wors and the Rudkins.  In the response from Mr. Du Wors, he claims to be "unaware" of the loan made by plaintiff and could she send him a "copy" of the loan document.  Defendants were copied on the response.  Mr. Du Wors is the one who sent plaintiff the Notice of Shareholder Meeting and when plaintiff informed defendant Chad Rudkin that she could not attend, he told her that she could "attend by telephone."  Finally, plaintiff is aware that there is some evidence that Doug Lower was, indeed, a shareholder of HPV.  This evidence confirms some of the earlier representations made to plaintiff, but rebuts defendants' current claims.  For whatever reason, Mr. Du Wors billed HPV for time spent discussing the "shares of Doug Lower" in HPV.  *See* Exhibit "G" to Declaration of Reed Yurchak.  The true ownership of HPV more closely resembles the "Who's on First" comedic dialogue.

The fact that plaintiff has submitted a claim to the receiver for HPV is irrelevant to the instant motion, as defendants well know.  Plaintiff was required to submit the claim, which is a claim for the money owed under the terms of her Promissory Note.  However the claim with the receiver is not dispositive of any ownership claim against HPV as that will have to be determined by the court.  The suggestion that plaintiff has somehow waived any right to recovery for the malfeasance of the defendants because she has filed a claim is misleading.  Plaintiff not only asserts her rights to repayment under the terms of the Promissory Note, but also the equity rights

**Opposition** — 22
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

LAW OFFICE OF REED YURCHAK
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205

granted to her under the Joint Participation Agreement.  Plaintiff does not waive any of those rights.

**CONCLUSION**

For the reasons set forth herein above, plaintiff contends that the pleadings demonstrate a clear, plausibility of a recovery against defendants.  There are numerous, genuine issues of material fact to be determined by the fact finder.  Additionally the court can see from the allegations that claims exist against these defendants, even if not "named or titled" properly.  Finally, there is a genuine issue regarding disregarding the corporate entity of HPV and HPVG, and imposing personal liability upon the moving defendants.  Plaintiff has set forth a prima facie case demonstrating the "bad faith" exhibited by defendants in their management of HPV and HPVG.  For these reasons, plaintiff respectfully requests that the court deny defendants' motion in its entirety.

DATED this 19th day of February , 2014

By:/s/ Reed Yurchak                               .
REED YURCHAK, WSBA No. 37366
Law Office of Reed Yurchak
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
Tel: 425-890-3883
Fax: 425-654-1205
Email: yurchaklaw@gmail.com
Attorney for Plaintiff

**Opposition** — 23
SCHWEICKERT v. HPV, HPVG, RUDKINS, DU WORS ET AL.

**LAW OFFICE OF REED YURCHAK**
40 Lake Bellevue Dr. #100
Bellevue, WA 98005
TELE: 425-941-6659; FAX: 425-654-1205