EXHIBIT "H"

**INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT**

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. Defined Terms. Unless otherwise defined, capitalized terms used herein shall have the following meanings:

    (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

    (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. Assignment. For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. Consideration. In consideration for the Assigned Intangible Property, PURCHASER shall:

    (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

    (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. Rights Granted To Or Inuring To The Benefit of PURCHASER. The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

    (a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

        I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

        II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

        III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

    (b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

    (c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

    (d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. PURCHASER's Exclusive Ownership of the Assigned Intangible Property. PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. SELLERS' Assistance in Perfecting Ownership. SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. Confidentiality. SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. Representations. SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. Miscellaneous. This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

Hunts Point Ventures, Inc. (PURCHASER)

Its: CEO
Name: STEPHEN Schweickert
Date: AUG 18, 2010

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

mark phillips
Date: 18 August 2010

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is **NOT**, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

**INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT**

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. Defined Terms. Unless otherwise defined, capitalized terms used herein shall have the following meanings:

   (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

   (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. Assignment. For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. Consideration. In consideration for the Assigned Intangible Property, PURCHASER shall:

   (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

   (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. Rights Granted To Or Inuring To The Benefit of PURCHASER. The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

   (a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

      I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

      II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

      III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

   (b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

   (c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

   (d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. PURCHASER's Exclusive Ownership of the Assigned Intangible Property. PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. <u>SELLERS' Assistance in Perfecting Ownership</u>. SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. <u>Confidentiality</u>. SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. <u>Representations</u>. SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. <u>Miscellaneous</u>. This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

Hunts Point Ventures, Inc. (PURCHASER)

Its: CEO
Name: STEPHEN Schweickert
Date: AUG 18, 2010

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

mark phillips
Date: 18 August 2010

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is **NOT**, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

## INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. Defined Terms. Unless otherwise defined, capitalized terms used herein shall have the following meanings:

   (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

   (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. Assignment. For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. Consideration. In consideration for the Assigned Intangible Property, PURCHASER shall:

   (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

   (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. Rights Granted To Or Inuring To The Benefit of PURCHASER. The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

   (a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

   I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

   II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

   III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

   (b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

   (c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

   (d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. PURCHASER's Exclusive Ownership of the Assigned Intangible Property. PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

PATENT
REEL: 026110 FRAME: 0612

JD 015063

6. **SELLERS' Assistance In Perfecting Ownership.** SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. **Confidentiality.** SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. **Representations.** SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. **Miscellaneous.** This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

**Hunts Point Ventures, Inc. (PURCHASER)**

Its: CEO
Name: STEPHEN SCHWEICKERT
Date: AUG 18, 2010

*[signature]*

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

*mark phillips*
Date: 18 August 2010

**Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY**

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is NOT, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

# INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. **Defined Terms.** Unless otherwise defined, capitalized terms used herein shall have the following meanings:

(a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

(b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. **Assignment.** For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. **Consideration.** In consideration for the Assigned Intangible Property, PURCHASER shall:

(a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

(b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. **Rights Granted To Or Inuring To The Benefit of PURCHASER.** The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

(a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

(b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

(c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

(d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. **PURCHASER's Exclusive Ownership of the Assigned Intangible Property.** PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. **SELLERS' Assistance in Perfecting Ownership.** SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. **Confidentiality.** SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. **Representations.** SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. **Miscellaneous.** This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

Hunts Point Ventures, Inc. (PURCHASER)

Its: CEO
Name: STEPHEN SCHWEICKERT
Date: Aug 18, 2010

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

mark phillips
Date: 18 August 2010

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is NOT, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

# INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. **Defined Terms.** Unless otherwise defined, capitalized terms used herein shall have the following meanings:

   (a) "**Assigned Intangible Property**" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

   (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. **Assignment.** For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. **Consideration.** In consideration for the Assigned Intangible Property, PURCHASER shall:

   (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

   (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. **Rights Granted To Or Inuring To The Benefit of PURCHASER.** The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

   (a) **Copyright.** All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

   I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

   II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

   III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

   (b) **Trademark/Trade Dress/Good Will.** All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

   (c) **Patent.** All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

   (d) **Any and All Other Rights.** Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. **PURCHASER's Exclusive Ownership of the Assigned Intangible Property.** PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

PATENT
REEL: 026110 FRAME: 0612

JD 015170

6. **SELLERS' Assistance in Perfecting Ownership.** SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. **Confidentiality.** SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. **Representations.** SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. **Miscellaneous.** This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

Hunts Point Ventures, Inc. (PURCHASER)

Its: CEO
Name: STEPHEN SCHWEICKERT
Date: Aug 18, 2010

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

mark phillips
Date: 18 August 2010

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is NOT, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

**INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT**

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. Defined Terms. Unless otherwise defined, capitalized terms used herein shall have the following meanings:

   (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

   (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. Assignment. For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. Consideration. In consideration for the Assigned Intangible Property, PURCHASER shall:

   (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

   (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. Rights Granted To Or Inuring To The Benefit of PURCHASER. The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

   (a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

      I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

      II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

      III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

   (b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

   (c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

   (d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. PURCHASER's Exclusive Ownership of the Assigned Intangible Property. PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. <u>SELLERS' Assistance in Perfecting Ownership</u>. SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.)  If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. <u>Confidentiality</u>. SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. <u>Representations</u>. SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. <u>Miscellaneous</u>. This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions.  Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts.  If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument.  Facsimile copies of this Agreement are acceptable as original copies.  To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

**Hunts Point Ventures, Inc. (PURCHASER)**

Its: *CEO*

Name: *STEPHEN Schweickert*

Date: *AUG 18, 2010*

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

*mark phillips*

Date: *18 August 2010*

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is **NOT**, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

**INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT**

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. **Defined Terms.** Unless otherwise defined, capitalized terms used herein shall have the following meanings:

    (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

    (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. **Assignment.** For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. **Consideration.** In consideration for the Assigned Intangible Property, PURCHASER shall:

    (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

    (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. **Rights Granted To Or Inuring To The Benefit of PURCHASER.** The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

    (a) **Copyright.** All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

        I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

        II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

        III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

    (b) **Trademark/Trade Dress/Good Will.** All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

    (c) **Patent.** All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

    (d) **Any and All Other Rights.** Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. **PURCHASER's Exclusive Ownership of the Assigned Intangible Property.** PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. <u>SELLERS' Assistance in Perfecting Ownership</u>. SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. <u>Confidentiality</u>. SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. <u>Representations</u>. SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. <u>Miscellaneous</u>. This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

**Hunts Point Ventures, Inc. (PURCHASER)**

Its: *CEO*
Name: *STEPHEN Schweickert*
Date: *AUG 18, 2010*

**Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)**

*mark phillips*
Date: *18 August 2010*

**Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY**

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is **NOT**, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.

**INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT**

This INTELLECTUAL AND GENERAL INTANGIBLE PROPERTY PURCHASE AND SALE AGREEMENT ("Agreement") is entered into as of the latest date printed under the signature lines below ("Effective Date"), by and between Mark Phillips, an individual, New Dot Corporation, a Washington corporation, a/k/a A Dot Corporation, and Banana Corporation, a Washington corporation, a/k/a Metawallet ("SELLERS"), and Hunts Point Ventures, Inc. ("PURCHASER"), a Washington corporation.

1. Defined Terms. Unless otherwise defined, capitalized terms used herein shall have the following meanings:

    (a) "Assigned Intangible Property" means any existing copyrights, trademarks, patents, patent applications and trade secrets or other intellectual property and all products, marketing plans, advertising plans, business strategies and business plans, any and all methods of conducting business, machines, articles of manufacture, methods, procedures, processes, formulae, algorithms, computer programs, domain names, software, techniques, equipment, devices, apparatuses, systems, compounds, compositions of matter, designs or configurations of any kind, or improvement thereon, or other works of authorship, including without limitation, all outlines; proposals; precursors; portions of works and works in progress; and all inventions; works devised or created by reverse engineering; mask works; technology; information; know-how; drawings; schematics; blueprints; materials and tools; support or maintenance programs or materials created by SELLERS. Assigned Intangible Property shall include any work, invention or other intangible property created by SELLERS which qualifies for protection under copyright, patent, trademark or trade secret laws and the right to recover thereon. Without limitation, such Assigned Intangible Property includes all intangible property referenced, described or disclosed in **Schedule A** attached hereto.

    (b) "Sellers' Representative" means Mark Phillips in his personal capacity and as a representative of New Dot Corporation and Banana Corporation.

2. Assignment. For valuable consideration (as outlined below), SELLERS agree to, and hereby expressly do, assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the Assigned Intangible Property. SELLERS assign such rights whether they are known or unknown, suspected or unsuspected, and whether SELLERS has such rights now or may acquire them in the future. SELLERS assign such right, title and interest to PURCHASER exclusively, in perpetuity, and throughout the universe for all forms of media. Such rights include without limitation all rights in copyright, patent, patent applications, trademarks, trade secrets, and other intellectual property (including such rights as they exist today and which may be later created or modified, statutorily or otherwise).

3. Consideration. In consideration for the Assigned Intangible Property, PURCHASER shall:

    (a) within 30 days of the latest date printed under the signature lines, pay to Seller's Representative an amount equal to $100,000; and

    (b) PURCHASER'S obligation to pay up to $1,000,000 of SELLERS' attorneys' fees, court costs and related expenses in the matter of Phillips v. MOD, Inc. (King County Case No. 09-2-42891-3) provided that those fees, costs and expenses are incurred on or after _____, 2010 and to the extent those amounts are owed by SELLERS to Newman & Newman, Attorneys at Law, LLP.

4. Rights Granted To Or Inuring To The Benefit of PURCHASER. The rights assigned to PURCHASER pursuant to this Agreement, include, without limitation, the following rights in and to Assigned Intangible Property:

    (a) Copyright. All rights in copyright (including any rights in copyright existing today or which may be later-created statutorily or otherwise), including:

        I. The exclusive rights to (i) reproduce the Assigned Intangible Property, (ii) prepare derivative works based on the Assigned Intangible Property, (iii) distribute copies of the Assigned Intangible Property, both in public and in private, (iv) perform the content of the Assigned Intangible Property, both in public and in private, if applicable, (v) display the Assigned Intangible Property, both in public and in private, and (vi) perform the Assigned Intangible Property (by means of a digital audio transmission, if applicable);

        II. The exclusive rights to register a copyright in any of the Assigned Intangible Property, or any portion thereof in the name of PURCHASER or otherwise, anywhere throughout the world; and

        III. The exclusive right to exploit, license, assign, mortgage, convey, alienate, sell, use, lend, lease, or otherwise dispose of the Assigned Intangible Property in any and all media, electronic or otherwise, anywhere throughout the world.

    (b) Trademark/Trade Dress/Good Will. All rights pertaining to the good will and trade dress associated with the Assigned Intangible Property as well as all rights pursuant to the Federal Lanham Act, state and foreign trademark laws, and all rights which protect the source of a service or good from infringement, dilution, or palming off of that service or good, related to the Assigned Intangible Property;

    (c) Patent. All rights, title, and interest whatsoever in patent. The rights granted to PURCHASER pursuant to this Section, include, without limitation, all rights and protections provided to inventors under United States and foreign patent laws, including the right to file for and obtain patent protection for the Assigned Intangible Property;

    (d) Any and All Other Rights. Any and all other rights, whether or not intellectual property rights, suspected or unsuspected, known or unknown, related to the Assigned Intangible Property, including trade secret rights, mask works rights, and all business, contract rights, trade and other association memberships, and goodwill in, incorporated or embodied in, used to develop, or related to any of the Assigned Intangible Property.

5. PURCHASER's Exclusive Ownership of the Assigned Intangible Property. PURCHASER shall be the exclusive owner of the Assigned Intangible Property. By assigning all rights in and to the works to PURCHASER, SELLERS shall not be entitled to sell, lease, transfer, share, disclose or otherwise convey to any third party the Assigned Intangible Property, or any portion thereof.

6. SELLERS' Assistance in Perfecting Ownership. SELLERS agree to assist PURCHASER in every legal way to evidence, record and perfect any assignments of ownership discussed in this Agreement. Further, SELLERS agree to assist PURCHASER in applying for, obtaining recordation of, and, from time to time, enforcing, maintaining, and defending the assigned rights discussed in this Agreement. (This assistance shall include, but is not limited to, assisting and if required appearing (a) in the prosecution of applications for patents or applications for the reissue of such patents, (b) in the prosecution or defense of all interference which may be declared involving patent applications and patents, and (c) in any and all litigations in which PURCHASER may be directly or indirectly involved or indirectly involved in inventions, patents and improvements.) If, for any reason, PURCHASER is unable to secure the SELLERS' signature to any document PURCHASER is entitled to under this Agreement, SELLERS hereby irrevocably designate and appoint PURCHASER and its duly authorized officers and agents, as SELLERS' agents and attorneys-in-fact with full power of substitution to act for and on its behalf and instead of SELLERS, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by SELLERS.

7. Confidentiality. SELLERS understands that the Assigned Intangible Property constitutes valuable proprietary products and trade secrets of PURCHASER embodying substantial creative efforts and confidential information, ideas, and expressions. SELLERS shall not disclose, provide, or otherwise make available to any third party, in whole or in part, the Assigned Intangible Property or any information relating thereto, or any confidential material including, without limitation, any trade secrets or information relating to the business, business plans, marketing, or other information about PURCHASER or its clients.

8. Representations. SELLERS represents that, to the best of their knowledge, Schedule A contains a list of his intangible property. SELLERS further represent they hold valid title to all items described or disclosed in Schedule A and that he is free to assign them (and hereby does assign them, and all associated rights, title and interest) to PURCHASER.

9. Miscellaneous. This Agreement will be governed by and interpreted in accordance with the applicable U.S. federal law and the laws of the State of Washington without regard to choice of law provisions. Each party hereto (i) consents to and waives any objections to personal jurisdiction, service of process, and venue in the state and federal courts located in the State of Washington, King County, and (ii) agrees that any action or proceeding arising out of or related to this Agreement will be filed and prosecuted only the aforementioned courts. If any provision of this Agreement is held invalid, unenforceable or void, the remainder of the Agreement shall not be affected thereby and shall continue in full force and effect. This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, and such counterparts together shall constitute one and the same instrument. Facsimile copies of this Agreement are acceptable as original copies. To the extent this Agreement conflicts with any prior agreement between the parties, the terms set forth in this Agreement shall supersede such prior agreement to the extent they conflict.

IN WITNESS WHEREOF, the parties AGREE to be bound by the above terms and this Agreement is executed on the latest date written below:

Hunts Point Ventures, Inc. (PURCHASER)

Its: CEO

Name: STEPHEN Schweickert

Date: AUG 18, 2010

Mark Phillips in his personal capacity and on behalf of New Dot Corporation and Banana Corporation (SELLERS)

mark phillips

Date: 18 August 2010

### Schedule A - NON-EXHAUSTIVE LIST OF CERTAIN SPECIFIC INTANGIBLE PROPERTY

SELLERS hereby expressly assign, transfer, and convey to PURCHASER all rights, title, and interest whatsoever in and to the items listed in the document attached to this Agreement and marked "Schedule A". This list is **NOT**, and shall not be construed to be, an exhaustive list of the Assigned Intangible Property covered by the Agreement.