1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8

| | |
|---|---|
| JENNIFER P. SCHWEICKERT, | |
| Plaintiff, | Case No. 13-cv-675RSM |
| v. | ORDER ON MOTIONS |
| HUNTS POINT VENTURES, INC.; HUNTS POINT VENTURE GROUP, LLC; CHAD and ELIZABETH RUDKIN, and their marital community comprised thereof; JOHN DU WORS; and DOES 1-4, | |
| Defendants. | |

9
10
11
12
13
14
15

16  This matter comes before the Court upon Motion for Judgment on the Pleadings by

17  Defendants Chad and Elizabeth Rudkin (Dkt. # 27), Motion for Leave to Amend Complaint

18  by Plaintiff (Dkt. # 29), as well as numerous discovery-related motions by the parties (Dkt. ##

19  30, 54, 60, 61, 63, 67). Also pending in this case is a motion for summary judgment by

20  Defendant John Du Wors, as well as related motions, which shall be the subject of a separate

21  order. Having considered the pleadings, the parties' moving papers and opposition thereto,

22  and the remainder of the record, the Court grants Defendants' Motion for Judgment on the

23  Pleadings and denies Plaintiff's  request for leave to amend. The Court further rules on the

24  various discovery orders as provided herein.

25
26

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jennifer Schweickert filed this lawsuit on March 15, 2013 under this Court's diversity jurisdiction, seeking monetary damages and declaratory judgment for various state law claims arising out of a loan made by Plaintiff to Defendant Hunt Point Ventures, Inc. ("HPV"). HPV was incorporated on or about May 3, 2010 by various friends of Mark Phillips, a non-party who was convicted in a separate criminal proceeding on counts of wire fraud, mail fraud, and money laundering arising out of theft from his former company MOD Systems, Inc. As Phillips became involved in civil litigation with Mod Systems, Inc. in 2009 and 2010, as well as the subject of criminal investigation, he contacted friends including Defendants Chad and Elizabeth Rudkins (the "Rudkins") for assistance in financing his litigation costs and protecting his intellectual property. Dkt. # 15, First Amended Complaint ("FAC), ¶¶ 9, 10. Phillips subsequently licensed his intellectual property ("IP") to HPV, which was to raise funds by prosecuting violations of the IP. *Id.* at ¶ 11. Plaintiff believes that the initial shares of HPV were divided between Chad Rudkin as well as non-parties Stephen Schweickert, Doug Lower, and Mark Phillips. *Id.*

Desiring to help Phillips and further efforts to monetize his IP, Plaintiff allegedly made arrangements in April 2011 with then HPV C.E.O. Stephen Schweickert to loan $200,000 to HPV. *Id.* at p. 3 & ¶ 15. Plaintiff alleges that HPV's counsel, Defendant John Du Wors, who was also simultaneously serving as personal attorney for Phillips, made deliberate misrepresentations to her in order to induce her investment. *Id.* at ¶¶ 16-18. She asserts that Du Wors prepared the promissory note on behalf of HPV, which stated that "the Lender has been induced to enter this agreement with the mutual understanding and stipulation that an 8% fully paid passive membership participation in that venture entity known as Hunts Point Venture Group, LLC ["HPVG"] shall be granted." *Id.* at ¶ 19. Plaintiff further asserts that she was told by Stephen Schweickert that her loan would allow HPV to form HPVG and that she would be given an "8% passive membership" without regard to HPV's obligation on the note. *Id.* at ¶ 26. Plaintiff wired $200,000 to an HPV account on April 26, 2011 upon receiving a

signed copy of the Promissory Note and Joint Participation Agreement from HPV and HPVG. *Id.* at ¶ 27; *see also id.* at Ex. A.

Plaintiff asserts that she has not received any scheduled payments from HPV on her note or any written documentation concerning her ownership of shares in HPVG. *Id.* at pp. 12, 13. She filed the instant lawsuit seeking to recover her damages from this alleged breach. Plaintiff's First Amended Complaint asserts four causes of action: (1) breach of contract against Defendants HPV and the Rudkins, (2) fraud in the inducement against Defendant John Du Wors, (3) conspiracy against Defendants Rudkins and Du Wors, and (4) negligent misrepresentation against Defendant Du Wors. The Court entered a Scheduling Order on September 13, 2013, setting a deadline for joinder of parties of October 11, 2013. Dkt. # 24. On November 25, 2013, this action was automatically stayed for 60 days upon the appointment of a general receiver on behalf of Defendant HPV in Case No. 13-2-40014-6 (King Co. Sup. Ct.). *See* Dkt. # 26. Plaintiff has since filed a proof of claim in the receivership action seeking to recover principal and interest on her loan directly from HPV. *See* Dkt. # 28, Ex. 1.

Upon lifting of the automatic stay, the Rudkins filed the instant Motion for Judgment on the Pleadings as to all claims asserted against them or, in the alternative, for summary judgment to the extent that Plaintiff seeks to assert derivative claims as a shareholder of HPV. *See* Dkt. # 27. Plaintiff opposes judgment on the pleadings and also seeks the Court's permission to file a Second Amended Complaint adding Elizabeth Rudkin's mother, Sandra Hoover, as a named Defendant, adding new factual allegations with respect to Hoover and the Rudkins, adding new claims against the Rudkins. *See* Dkt. ## 28, 29. In addition, Plaintiff moves the Court to compel Defendants HPV, HPVG, and the Rudkins to respond to discovery requests. Dkt. # 30.

The remaining discovery motions relate to Defendant Du Wors. Du Wors moves the Court to compel Plaintiff to respond to his interrogatories and requests for production (Dkt. # 54), while Plaintiff moves the Court to compel Du Wors to respond to her second set of

discovery requests served on June 11, 2014 (Dkt. # 60). Prior to the September 15, 2014 deadline for discovery, Du Wors filed a motion seeking to complete two discovery events beyond this deadline: the depositions of Stephen and Joyce Schweickert and obtainment of documents pursuant to third-party subpoenas on email service providers. Dkt. # 61. Du Wors proceeded to serve Subpoenas Duces Tecum on Apple, Inc. and Google, Inc., which Plaintiff as well as interested non-parties Joyce Schweickert and her attorney Jeffrey Keane move to quash. *See* Dkt. ## 63, 67. Du Wors has since filed a motion for summary judgment, which shall be the subject of a forthcoming order. The instant Order considers all other pending motions in turn.

## DISCUSSION

**I.       Motion for Judgment on the Pleadings (Dkt. # 27)**

**A. Legal Standard**

"After the pleadings are closed —but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).[1] A Rule 12(c) motion is functionally equivalent to a Rule 12(b)(6) motion. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The principal difference is one of timing: in the former an answer has been filed while in the latter, the motion is filed in lieu of an answer. *See id.*; *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2012 WL 2565067, *2 n. 2 (W.D. Wash. 2012). Accordingly, a motion for judgment on the pleadings is analyzed under the standard applicable to a motion to dismiss for failure to state a claim upon which relief could be granted. *Id.*

Judgment on the pleadings is appropriate if, assuming the truth of all material facts pled in the complaint, the moving party clearly establishes that it is entitled to judgment as a

---

[1] The Rudkins also move for summary judgment pursuant to Fed. R. Civ. P. 56 to the extent that Plaintiff intends to assert derivative claims as a shareholder of HPV. *See* Dkt. # 27, p. 16. On response, Plaintiff has conceded that she does not attempt to file derivative claims. *See* Dkt. # 31, pp. 19-31. Accordingly, the Court solely considers whether Plaintiff's First Amended Complaint should be dismissed as to the Rudkins pursuant to Fed. R. Civ. P. 12(c).

matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Cascade* Yarns, 2012 WL 2565067 at *2. While the court must accept all alleged facts as true, it is not required to accept as true a "legal conclusion couched as a factual allegation." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In general, the court may not look beyond the pleadings to resolve an issue without transforming the motion into one for summary judgment under Rule 56. *Hal* Roach, 896 F.2d at 1550. The court may, however, take into account matters to which it can take judicial notice without converting a Rule 12(c) motion. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999). The court may also consider material properly submitted as part of the complaint, such as, in this instance, the Promissory Note and Joint Participation Agreement (FAC at Ex. 1). *See Hal Roach*, 89 F.2d at 1555 n. 19. A defendant's Rule 12(c) motion on the pleadings may consequently be granted if, after assessing the complaint and any matters for which judicial notice is proper, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd*., 132 F.3d 526, 529 (9th Cir. 1997)  (internal citations and quotations omitted).

Heightened pleading standards apply where a plaintiff states a claim for fraud. Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Sanfrod v. MemberWorks, Inc.*, 624 F.3d 550, 558 (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal alterations omitted). To avoid dismissal for failing to comply with Rule 9(b), the complaint must state with particularity "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal quotation and citation omitted); *see also Kearns*, 567 F.3d at

1124 ("Averments of fraud must be accompanied by the who, what, when, where, and how of

the misconduct alleged.") (internal quotations and citations omitted).

   **B. Analysis**

   As an initial matter, the Court denies Plaintiff's request to take judicial notice of "the

facts noted" in her opposition brief. *See* Dkt. # 31, p. 7. Plaintiff asks that the Court take

notice of a declaration by Stephen Schweickert filed in a state court case initiated by Mark

Phillips, as well as the complaints filed by Plaintiff in two separate cases in state court against

the Rudkins and HPV, respectively. *See id.*; Dkt. # 32, Exs. A-C. Matters that are properly the

subject of judicial notice include proceedings in courts within and without the federal system

that are directly related to issues at hand. *See U.S. ex rel. Robinson Rancheria Citizens

Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). While a court may take judicial

notice of these matters of public record, it "may not take judicial notice of a fact that is

'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2011)

(quoting Fed. R. Evid. 201(b)). Thus, the Court may take notice of the filing of a declaration

and complaints in these three state court actions but, contrary to Plaintiff's request, it may not

accept the truth of the contested factual assertions in each of these documents. *See NuCal

Foods, Inc. v. Quality Egg LLC*, 887 F.Supp.2d 977, 984-85 (E.D. Cal. 2012) ("While the

court cannot accept the veracity of the representations made in the documents, it may properly

take judicial notice of the existence of those documents.").  Plaintiff has also attached and

relied on, for her opposition, several extensive exhibits for which no judicial notice has been

requested, including HPVG's 2011 annual reports, corporate notes, and a billing statement by

Du Wors. *See* Dkt. # 32, Exs. D-G. As no judicial notice of these materials is requested and as

they are outside of and not relied on in the pleadings, the Court disregards these exhibits as

well as Plaintiff's reliance on them in her response.

   On the merits, the Court agrees with the Rudkins that each of Plaintiff's claims

asserted against them in her First Amended Complaint fail as a matter of law and is therefore

subject to a judgment of dismissal under Rule 12(c). First, Plaintiff's breach of contract claim

against the Rudkins fails because no contract is alleged to exist between Plaintiff and the Rudkins. "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately caused damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995) (internal citation omitted). The sole contract alleged in the FAC was entered into between Plaintiff and HPV. The Promissory Note and Joint Participation Agreement that Plaintiff asserts manifests the breached contract was signed by Stephen Schweickert on behalf of Borrower HPV. There are no further parties to this contract beyond Borrower (HPV), Lender (Plaintiff), and HPV. *See* FAC, Ex. A. Plaintiff can consequently prove no set of facts to show that she is entitled to judgment against the Rudkins on her breach of contract claim, where the only contract alleged imposed no duties on them.

On response, Plaintiff asserts that she has pled sufficient facts to maintain a plausible breach of contract claim against the Rudkins under the doctrine of disregard of a corporate entity. Plaintiff further seeks permission to amend her pleadings to specifically assert a claim for corporate disregard to the extent that the Court does not find the doctrine already invoked in the FAC. As an initial matter, the Court does not find that the FAC puts Defendants on notice that Plaintiff seeks to hold the Rudkins liable for HPV's alleged breach of its agreement. The Court also finds that Plaintiff has failed to meet the pleading standards for a cause of action to disregard the corporate form through both the FAC and her proposed Second Amended Complaint (Dkt. # 29, Ex. E ("SAC")).

The doctrine of corporate disregard allows the "corporate entity to be disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another." *Morgan v. Burks*, 93 Wash.2d 580, 584, 611 P.2d 751 (1980) (en banc). The doctrine is triggered where 1) the corporation and its controllers are functional alter-egos, or 2) the liable corporation has been bereft of funds by those controlling it in order to avoid actual or potential liability. *Id.*

The doctrine cannot be invoked in this case for several reasons. First, Washington law precludes corporate disregard where a liable corporation's assets are intact and unaffected by the alleged wrongful activity. *Id.* at 590 (appellate court erred in allowing disregard of corporate form "when the corporation's assets are intact and thus available for satisfaction of the judgment against it"). Here, Plaintiff's proposed SAC itself concedes that HPV's assets remain intact despite the alleged breach. It alleges that now, as at the time of Plaintiff's loan, HPV's sole assets have consisted of the Phillip's IP, which she asserts is valued at "millions of dollars." SAC at ¶ 39.

Even if it were not the case that HPV's assets remain intact, Plaintiff's proposed cause of action would still fail. Corporate disregard requires that the corporate form "be intentionally used to violate or evade a duty," which abuse "typically involves fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and the creditor's detriment." *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wash.2d 403, 410, 645 P.2d 689 (1982) (internal quotations omitted). Here, Plaintiff primarily asserts that such abuse occurred through HPV's execution of a secured note sold to Hoover, which had the effect of subordinating Plaintiff's loan. *See* SAC at ¶ 65. However, Plaintiff's pleadings do not show this loan to be anything other than a routine business decision by a company in need of further capitalization, and there is no assertion that the Rudkins intended to cause HPV to evade its asserted duty to repay Plaintiff or that they personally benefitted thereby. *See, e.g., Meisel*, 97 Wash.2d at 410 (no disregard of corporate form where corporate officer transferred his remaining shares to his mother). Corporate disregard is also inappropriate where, as here, a plaintiff knows a company to be in shaky financial conditions but fails to make use of appropriate safeguards, such as a securing her capital contribution through a personal guarantee. *See Truckweld Equipment Co., Inc. v. Olson*, 26 Wash.App. 638, 646, 618 P.2d 1017 (1980) (no disregard where creditor "made no effort to obtain [a] personal guarantee prior to extending credit nor did it file timely chattel

liens when [] payment became questionable"); *see also* SAC at ¶ 22 ("At the time of [Plaintiff's loan], HPV was almost insolvent and in desperate need of a cash infusion.").

Finally, Plaintiff's reliance on a theory of asset commingling for corporate disregard also fails. Plaintiff cites *McCombs Constr. v. Barnes*, 32 Wn. App. 70, 645 P.2d 1131 (1982) for the proposition that courts may pierce the corporate veil where a corporate officer commingles his personal funds with the corporation's assets such that separation between them ceases to exist. *See* Dkt. # 31, p. 14. However, this alter-ego theory is only triggered where the officer commingles his or her own affairs with that of the corporation. *See McCombs*, 32 Wn.App. at 77 ("The record provides substantial evidence that [defendant] commingled *his* personal affairs with those of the corporation such as to warrant imposition of personal liability.") (emphasis added). That HPV payments were made "directly from Mr. Du Wors' IOTLA account," Dkt. # 31, p. 14, does not support the imposition of personal liability on the Rudkins.

Plaintiff similarly fails to plead a viable claim for interference with contractual rights. Plaintiff admits that this claim is not pled in the FAC, Dkt. # 31, p. 15, and the Court fails to discern within it sufficient notice of a claim for tortious interference. The Rudkins are consequently entitled to judgment as to this claim. Plaintiff also asks the Court to evaluate the instant motion together with her Motion to Amend. Even doing so, the Court is unable to discern a plausible claim for tortious interference against the Rudkins. As an initial matter, this claim directly undercuts Plaintiff's attempt to maintain a breach of contract claim against the Rudkins. It is well-accepted that an "action for tortious interference with a contractual relationship lies only against a third party." *Olympic Fish Products, Inc. v. Lloyd*, 93 Wash. 2d 596, 598, 611 P.2d 737 (1980) (en banc). Were the Rudkins party to Plaintiff's contract, as Plaintiff alleges, they could not be held "liable in tort for inducing [their] own breach." *Id.*

Setting aside the internal inconsistencies of Plaintiff's causes of action, Plaintiff fails to overcome the privilege maintained by the Rudkins as corporate officers. Under Washington law, "an officer or director of a corporation is not personally liable for inducing the

corporation to violate a contractual relation provided the officer or director acts in good faith," where "good faith means nothing more than an intent to benefit the corporation." *Id.* at 739. Although Plaintiff alleges in the proposed SAC that the Rudkins acted solely to serve their own purposes, SAC at ¶¶ 82 – 83, she fails to allege any facts to bolster this legal conclusion. Even if the Rudkins acted with self-serving motives in eliciting Hoover's loan and thereby interfered with Plaintiff's contractual rights, the benefit to HPV's financial condition of this increased capitalization operates to shield the Rudkins from immunity. *See Olympic Fish* at 739 ("Good faith…is not equated with the lack of selfish interest in enhancing the financial condition of the corporation."). Further, the Rudkins are statutorily entitled to rely on the advice of corporate counsel in discharging their duties. *See* RCW 23B.08.300(2)(b)  ("In discharging the duties of a director, a director is entitled to rely on information, opinions, reports, or statements….by legal counsel…as to matters the director reasonably believes are within the person's professional or expert competence[.]"). According to Plaintiff's own pleadings, the Rudkins engaged in the alleged tortious interference on the advice and instruction of HPV's corporate counsel, Du Wors. *See, e.g.*, SAC at ¶ 25 (alleging that Du Wors "counseled or instructed the Rudkins to book plaintiff's loan as an 'angel investment' with HPV, rather than a loan"); ¶ 81 (c) (alleging that Du Wors "directed his law firm to prepare a 'secured note' for defendant Hoover that subordinated plaintiff's note").

Finally, Plaintiff has failed to plead a viable claim of conspiracy against the Rudkins, and Plaintiff's Sixth Cause of Action must therefore be dismissed as well. "In Washington, as elsewhere, a civil conspiracy claim must be premised on underlying 'actionable wrongs,' 'overt acts,' or 'a tort working damage to the plaintiffs.'" *Nw. Laborers-Employers Health & Sec. Trust Funds v. Philip Morris, Inc.*, 58 F.Supp.2d 1211, 1215 (W.D. Wash. 1999) (citing *W.G. Platts, Inc. v. Platts*, 73 Wn. 2d 434, 438-50, 438 P.2d 867 (1968)). While Plaintiff's FAC lacks a clear statement of the underlying claim, the proposed SAC alleges two subsets of conspiracy: (1) conspiracy to commit fraud and (2) conspiracy to interfere with contractual rights. SAC at ¶¶ 95-115.

This second species of conspiracy fails because it is derivative of Plaintiff's flawed claim for tortious interference. As explained *supra*, the Rudkins are shielded as officers from causing HPV to breach a contract where their acts benefitted the corporation.  Plaintiff has also failed to allege facts supporting the existence of an agreement between the Rudkins and the other Defendants to accomplish the goal of interfering with Plaintiff's contractual rights. "Mere suspicion or commonality of interest is insufficient to prove a conspiracy." *Wilson v. State*, 84 Wn. App. 332, 350-51, 929 P.2d 448 (1996) (internal citation omitted). Plaintiff fails in both the FAC and the proposed SAC to allege any non-speculative facts that, taken as true, support the existence of an agreement between the Rudkins and others to engage in interference with Plaintiff's contractual rights. *See e.g.* FAC at ¶ 54 ("Plaintiff *believes* that this mistreatment of her loan was approved by all defendants….") (emphasis added). In fact, the sole agreement that Plaintiff specifically contends had the effect of furthering a conspiracy was made between Du Wors and Stephen Schweickert. *Id.* at ¶ 57 ("This agreement represents another part of the plan between Mr. Schweickert and Mr. Du Wors to further their conspiracy."). The bare allegation that the Rudkins entered into a conspiracy does not suffice to establish an agreement.

Plaintiff's fraud-based theory of conspiracy also fails both because Plaintiff has failed to plead the existence of an agreement entered into by the Rudkins and because she has failed to plead the elements of her claim with particularity. "Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (internal citation and quotation omitted). To maintain a claim for fraud under Washington law, Plaintiff must show that he "justifiably relied on the defendant's misrepresentations." *Id.* at 761; *Stiley v. Block*, 130 Wash. 2d 486, 505, 925 P.2d 194 (1996) (en banc). Plaintiff characterizes the conspiracy as one through which Defendants engaged in "actions and representations [] to induce conduct by plaintiff and to make her believe that she was, in fact, a shareholder of HPV." Dkt. # 31, at p. 17.

Plaintiff's conclusory allegation that Defendants made material misrepresentations of fact is insufficient to meet the heightened pleading standards of Rule 9(b). Plaintiff does not attribute any specific misrepresentations to the Rudkins nor plead facts to support an agreement between the Rudkins and anyone else to engage in such fraudulent conduct. Plaintiff tries to salvage her claim by asserting on response that "Chad Rudkin [] personally emailed plaintiff about her attendance at an HPV shareholder's meeting" in order to induce her to invest in HPV. Dkt. # 31 at p. 17. However, her pleadings directly contradict this statement. They make clear both that it was Du Wors who prepared and emailed the invitation and that Plaintiff received the notice of the shareholder's meeting more than a year after her investment, which therefore could not have been induced by the notice. *See* FAC at *¶¶* 27, 59; SAC at ¶¶ 27, 100.

As all of Plaintiff's claims in her First Amended Complaint against the Rudkins are insufficient to withstand judgment on the pleadings, Defendant's Rule 12(c) motion shall be granted and all claims against the Rudkins shall be dismissed.

## II.  Motion for Leave to Amend and Motion to Compel Rudkins (Dkt. ## 29, 30)

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Although Rule 15(a) is "very liberal," the district court need not grant leave to amend where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; and (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th cir. 2006). As discussed above, Plaintiff's proposed Second Amended Complaint fails to plead viable claims against the Rudkins. As amendment of the pleadings with respect to the Rudkins is futile, it shall not be permitted, and dismissal of Plaintiff's claims against the Rudkins shall be with prejudice and without leave to amend. The dismissal of claims against the Rudkins moots Plaintiff's Motion to Compel the Rudkins to respond to discovery requests. *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to non-privileged matters that are "relevant to any party's claim or defense"). Accordingly,

Plaintiff's Motion to Compel (Dkt. # 30) shall be stricken as moot without award of fees or costs.

With respect to its attempted addition of the new Defendant, Sandra Hoover, Plaintiff's Motion for Leave to Amend is untimely. Plaintiff filed her Motion on February 13, 2014, over four months after the Court-ordered deadline for joinder of parties. *See* Dkt. # 24. Even accounting for the 60-day stay of this action, Plaintiff's Motion is still over two months past the cutoff. Under these conditions, Rule 15 is not the appropriate threshold standard. *Interscope Records v. Leadbetter*, 2006 WL 3858397, * 2 (W.D. Wash. 2006). Rather, Plaintiff's motion for leave to amend is governed by Federal Rule of Civil Procedure 16(b), according to which a party seeking to amend a pleading after the expiration of the time period provided in the Court's scheduling order must show "good cause" for amendment. *Id.*; Fed. R. Civ. P. 16(b). As discussed in further detail *infra*, the "good cause" standard primarily considers the diligence of the party seeking amendment. *See Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

Plaintiff has failed to show good cause for her belated motion to join Sandra Hoover as a Defendant. While Plaintiff asserts that she received new information through the receivership action, she does not assert that this information is the predicate of the proposed new claims against Hoover. In fact, the First Amended Complaint was already rife with the same factual assertions about Hoover that she now regards as the basis of her proposed claims. *See, e.g.*, FAC at ¶¶ 22, 25, 55, 56. Further, Plaintiff's asserted causes of action against Hoover for inference with contractual rights and conspiracy fail for many of the same reasons provided above, rendering amendment to assert claims against Hoover futile. Plaintiff's Motion for Leave to Amend shall accordingly be denied.

**III.    Motion to Compel by Du Wors (Dkt. # 54)**

Defendant Du Wors moves the Court for an order compelling Plaintiff to adequately respond to his discovery requests and for expenses associated with bringing the motion. *See* Dkt. # 54. Defendant's request shall be denied on several grounds. First, Du Wors accuses

Plaintiff of submitting late responses but neglects to note that they were timely submitted just three days after the automatic stay in this case was lifted. On the merits, Defendant's Motion fails because he has neglected to carry his burden to establish that his requests satisfy the relevancy requirements of Federal Rule of Civil Procedure 26(b). *See Silva v. McKenna*, 2012 WL 1596971, *2 (W.D. Wash. 2012) (citing *Bryant v. Ochoa*, 2009 WL 1390794, * 1 (S.D. Cal. 2009). The vague allegations that Du Wors provides regarding the incompleteness of all of Plaintiff's responses are insufficient to meet this standard. *Id.* It is for the moving party to make a case for the relevance of the requested discovery to claims and defenses and not for the Court to sift unguided through exhibits in an attempt to intuit the consequence of requested materials to the action.

Setting aside questions about relevance, Du Wors seeks broad production of correspondence to and from various third parties regarding Defendants, Stephen Schweickert, Phillips, or any contention in Plaintiff's Complaint. *See* Dkt. # 56, Ex. E (Requests for Production 26- 31). As to each of these Requests for Production (RFP's), Plaintiff has responded that she has produced all documents in her custody or control but is unable to produce documents to which she is not a party. *Id.* Du Wors asserts nonetheless that a "claim that [Plaintiff] has no such documents is [] not credible." Dkt. # 54, p. 4. Du Wors has provided no explanation for this conclusory assertion, and the Court can discern no reason why it is incredible that Plaintiff should be unable to produce documents and communications that were strictly between third parties. While Du Wors may be dissatisfied with the discovery obtained from Plaintiff, he cannot use Rule 37 to obtain information that Plaintiff has attested under oath she does not possess. *See Silva*, 2012 WL 1596971 at * 4. Accordingly, Defendant's Motion to Compel (Dkt. # 40) shall be denied, and costs and fees shall not be awarded.

### IV.     Motion to Compel Du Wors by Plaintiff (Dkt. # 60)

Plaintiff also moves the Court to compel responses to discovery requests from Defendant Du Wors and seeks monetary sanctions. *See* Dkt. # 60. Plaintiff asserts that she

served Du Wors with a first set of Interrogatories and RFPs on May 1, 2014 and a second set on June 11, 2014 in an effort to cure deficiencies asserted by Defendant. The parties agreed to extend the deadline for Defendant's responses to August 14, 2014. *See* Dkt. # 60, Exs. C-D. After conducting a meet and confer in accordance with Local Rule 37, Plaintiff filed the instant motion on August 28, 2014, as no discovery responses had yet been served. *See* Dkt. # 60-1. On September 8, 2014, the same day that he filed his response, Defendant emailed his responses and objections to discovery requests to Plaintiff's counsel. *See* Dkt. # 65, Ex. 7. Du Wors asserts that the delay was due to the fact that he needed to ascertain whether Mark Phillips was waiving his attorney client privilege as to this matter, given that Plaintiff's counsel was also acting as counsel for Phillips. *See* Dkt. # 64, p. 3. On reply, Plaintiff further asserts that the Court's intervention is required in order to obtain complete responses to Interrogatories 10 and 18 and in order to obtain documents in response to RFPs, as none at all were produced. *See* Dkt. # 70.

As Defendant has since responded to Plaintiff's RFP's, even if deficiently, the relief sought by Plaintiff has been accomplished. Accordingly, Plaintiff's motion to compel discovery responses is moot. Should Plaintiff find it necessary to seek the Court's intervention in compelling more complete responses, Plaintiff must first comply with the requirements of Fed. R. Civ. P. 37 and LCR 37, including conducting a meet and confer. Plaintiff must also seek the Court's permission to extend the discovery period for the purpose of such a motion. The Court would consider Defendant's delay and Plaintiff's diligence as bearing on good cause for an extension.

The Court does, however, find Plaintiff's request for monetary sanctions to have merit under these circumstances. Federal Rule of Civil Procedure 37 (a)(5)(A) provides that if a motion to compel discovery is granted or if the requested discovery is provided after the motion was filed, the Court must, after giving an opportunity to be heard, require the party whose conduct necessitated the motion, the attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the  motion, including attorney fees. Fed.

R. Civ. P. 37(a)(5)(A). Rule 37 further clarifies that the Court must not order this payment if the movant filed the motion before attempting to obtain the discovery in good faith without court action, if the opposing party's non-discovery was "substantially justified," or if circumstances exist that "make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

Here, Rule 37 triggers the requirement to order sanctions, as Defendant Du Wors indisputably failed to provide discovery responses until after Plaintiff's Motion to Compel was filed. Defendant has further failed to show circumstances to allow him to escape the strictures of Rule 37. Communications between counsel show that Plaintiff attempted in good faith to resolve this matter without Court interference and only filed the instant Motion when it appeared that no responses would be forthcoming before the September 15, 2014 discovery cutoff. Although Du Wors asserted that he is "substantially justified in providing tardy discovery responses," he has failed to provide any explanation why this may be the case. Dkt. # 64, p. 4. The only rationale provided by Defendant relates to his need to discern the protected status of communications with Phillips. This explanation does not appear to be made in good faith for several reasons, including that there is no reason that Defendant could not have timely raised this issue long known to him. As the Court can identify no other circumstances rendering an award of monetary sanctions unjust, and as it finds the $200/hour rate and 5.8 hours incurred by Plaintiff's counsel in making the Motion to be reasonable and appropriate, the Court grants Plaintiff's request for sanctions. Plaintiff shall be awarded her attorney fees and costs in the amount of $1,195.46 for having to bring this Motion.

## V.    Motion for Leave to Complete Two Discovery Events (Dkt. # 60) and Motions to Quash (Dkt. ## 63, 67)

Defendant Du Wors moves the Court to permit the completion of two discovery events after the September 15, 2014 discovery cutoff: (1) the depositions of Stephen and Joyce Schweickert, and (2) the obtainment of documents sought pursuant to third-party subpoenas to communication service providers. *See* Dkt. # 61. Du Wors asserts as reasons for the delayed

depositions that the address provided by Plaintiff in her disclosures for Stephen Schweickert was incorrect, necessitating Du Wors to obtain the correct address and reattempt service. With regard to Joyce Schweickert, Du Wors asserts that he was unable to personally serve her as the process server was not permitted entry into her gated community and that her attorney has agreed to accept service only if the deposition is noted for a date after September 22, 2014. *See id.* at p. 2. With respect to the third-party subpoenas duces tecum, Du Wors contends that the discovery was necessitated by Plaintiff's failure to provide responsive documents to requests served on her. He also asserts that the response date on the subpoenas was inadvertently set for three days after the discovery cutoff. *See* Dkt. # 62, ¶ 5.[2]

Plaintiff opposes both of Defendant's requests and, along with Joyce Schweickert, has filed a motion to quash the third-party subpoenas. *See* Dkt. ## 63, 67, 73. Plaintiff denies that there is good cause to extend where Du Wors waited almost a year to attempt to schedule the depositions despite knowing the identities and actions of the Schweickerts prior to the inception of this lawsuit and being named as a defendant in a complaint filed by Joyce Schweickert in King County. *See Phillips v. HPV, et al.*, Case No. 13-2-07233-5 SEA. Plaintiff further asserts that good cause does not exist for service of third-party subpoenas that are "overbroad and abusively drawn, seek documents that are immune from discovery and protected by attorney-client privilege." Dkt. # 73, p. 4. She and Joyce Schweickert assert through their Motions to Quash that the subpoenas are also in clear violation of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2711. Plaintiff argues that good cause

---

[2] Defendant Du Wors also moves through his reply brief for leave to complete the deposition of Mark Phillips after the discovery cut-off. The Court declines to address this issue, raised for the first time upon reply, as doing so would unfairly deprive Plaintiff of an opportunity to respond. *See Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990); *Horizon Air Industries, Inc. v. Airline Professionals Assoc.*, 2014 WL 2896001 at *4 (W.D. Wash. 2014). Nor may the Court address this issue by considering Plaintiff's Notice of Objection (Dkt. # 68) and Defendant's response thereto (Dkt. # 71). Rule 45 charges the nonparty served with a subpoena duces tecum to make objections within fourteen days of service or before the time for compliance. Fed. R. Civ. P. 45(c)(2)(B). On timely motion, the Court may then quash or modify the subpoenas. Fed. R. Civ. P. 45(c)(2)(B). A party cannot simply object to a subpoena duces tecum but must rather seek a protective order or make a motion to quash. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). On the other hand, Rule 45 authorizes the serving party to move for an order compelling production and inspection, Fed. R. Civ. P. 45 (d)(2)(B)(i), and authorizes the district court to hold a person in contempt who, having been served, fails to comply with a subpoena, Fed R. Civ. P. 45(g). *See generally*, *Chandola v. Seattle Housing Authority*, 2014 WL 4685351 at * 7 (W.D. Wash. 2014). The Court is unable to act without presentation of the appropriate motion if the parties remain unable to resolve this dispute between them.

cannot exist to give Defendant leave to extend a Court-ordered deadline in order to obtain documents in violation of statute. *See* Dkt. # 73, pp. 4-5.

The Court's Scheduling Order may only be amended for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). To show good cause, the party seeking amendment must demonstrate that the pretrial schedule could not reasonably be met despite his diligence. *Johnson*¸ 975 F.2d at 609. While prejudice to the party opposing modification may be considered, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* Keeping these standards in mind, the Court finds that Defendant has shown good cause to modify the Scheduling Order to allow for the depositions of the Schweickerts. Du Wors was reasonably diligent in taking steps prior to the discovery cutoff to complete these two depositions but has been thwarted in doing so by the provision of inaccurate information by Plaintiff and the unavailability of Joyce Schweickert's counsel. While Plaintiff is correct that Du Wors could likely have acted earlier to note these depositions, the Court is persuaded by his reasonable diligence combined with the absence of prejudice to Plaintiff that modifying the pretrial schedule for this very limited purpose is in the interest of justice.

Defendant's request for modification to pursue third-party subpoenas duces tecum on Apple and Google presents a different matter entirely. First, the Court does not find Defendant to have been reasonably diligent in waiting until the very close of the discovery period to issues subpoenas for information that was the subject of interrogatories and RFPs issued many months prior. Further, Defendant's carelessness in noting the subpoenas after the discovery deadline does not excuse their untimeliness and "offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609. Regardless, Defendant's request to extend the deadline for this purpose is moot, as the Court finds that they must be quashed for the reasons stated in Plaintiff and Joyce Schweickert's Motions to Quash.[3] *See* Dkt. ## 63, 66, 67.

---

[3] Defendant does not challenge Plaintiff's standing to bring her motion to quash, and the Court finds that Plaintiff has standing to quash a subpoena seeking her personal and privileged information protected by the SCA. *See, e.g., Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 974-75 (C.D. Cal. 2010)

First, the Court agrees that the subpoenas are patently overbroad and improperly seek production of privileged information. The subpoena issued to Apple seeks production of correspondence in the email accounts of Plaintiff sent to and received from Steve Schweickert, Doug Lower, Mark Phillips, Reed Yurchak, Jeff Keane, and Joyce Schweickert. *See* Dkt. # 63, Ex. A. The Google Subpoena demands production of correspondence in the email account of Mark Phillips sent to and received from Plaintiff and the same individuals listed in the Apple subpoena. *Id.* at Ex. The Court agrees with Plaintiff that the subpoenas are abusively overbroad in seeking communication of any nature between the listed parties without any attempt to ensure that the information sought is relevant to the claims and defenses in this action. Further, there is no question that the subpoenas explicitly demand production of information protected by attorney-client and likely work product privilege in seeking correspondence between Plaintiff and her counsel in this litigation. Defendant does not argue that attorney-client privilege has been waived and in fact concedes that the subpoenas seek production that extends beyond the permissible scope of discovery provided by Rule 26(b). *See* Dkt. # 75. The Court has no choice but to quash or severely modify the subpoenas under these circumstances. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (requiring district court to quash of modify subpoena that requires disclosure of privileged or protected matter if no waiver exists); Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring district court to quash or modify subpoenas that subjects a person to "undue burden"); *see also Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003).

Here, the Court determines that an order quashing, rather than modifying, the subpoenas provides the appropriate relief. Aside from their abusive overbreadth and invasion of privilege, the subpoenas are in direct violation of the SCA. The SCA prevents "providers" of communication services from divulging private communication to certain entities and individuals. *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), reversed on other grounds by *City of Ontario v. Quon*, 560 U.S. 746 (2010). The Act on its faces bars providers from knowingly divulging the contents of electronically stored

communications. 18 U.S.C. § 2702(a). *See Obodai v. Indeed, Inc.*, 2013 WL 1191267 (N.D. Cal. 2013) (modifying subpoena to permit disclosure of only non-content subscriber information as permitted under 18 U.S.C. § 2702(c)(6)). Civil subpoenas to a non-party are not among the specifically enumerated exceptions to this rule, *see* 18 U.S.C. § 2702(b) (enumerating exceptions), and are subject to the prohibitions of the SCA. *See Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2003). Case law also confirms that civil subpoenas such as those at issue here run afoul of the SCA by seeking to compel disclosure of the contents of communications held by email service providers such as Apple and Google. *See, e.g.*, *In re Facebook, Inc.*, 923 F.Supp.2d 1204, 1206 n. 4 (N.D. Cal. 2014) (citing cases); *Chasten v. Franklin*, 2010 WL 4065606, *2 (N.D. Cal. 2010).

Defendant's contention that the court could compel the disclosures is inapposite to consideration of the instant Motions to Quash. Even if the Court could compel Plaintiff to consent to the disclosure of some her emails under Rule 34, the providers would still only be permitted, but not required, to turn over the contents under 18 U.S.C. § 2702(b)(3) (providing that a provider "*may* divulge the contents of a communication" with the "lawful consent of the originator or an addressee or intended recipient of such communication) (emphasis added). It would still remain within the providers' discretion to respond. *See In re Facebook, Inc.*, 923 F.Supp.2d at 1206 (quashing subpoenas to provider despite possible consent to the production). Further, the time for Defendant to compel Plaintiff to consent to such production under Rule 34 has long ago lapsed.[4] *Cf. Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008) (directing plaintiff to serve a Rule 34 request for production on the defendant for the relevant messages).

Finally, Rule 45(d)(1) requires the Court to enforce the duty of the party responsible for issuing and serving a subpoena to avoid imposing undue burden or expense, through the imposition of an appropriate sanction, including reasonable attorney's fees. Fed. R. Civ. P.

---

[4] Du Wors specifically disclaimed that the RFPs that were the subject of his prior, timely motion to compel "ask Plaintiff to obtain correspondence in the control or custody of third parties." Dkt. # 54, p. 3.

45(d)(1). Sanctions in this matter are appropriate in light of the abusive scope of the subpoenas and the fact that clear authority shows that they should not have been issued in the first place. The Court accordingly awards $1200 in sanctions for the six hours that counsel for Plaintiff incurred in resisting the subpoenas at the reasonable rate of $200 per hour. *See* Dkt. # 63-1, ¶ 4. The Court finds that a similar fee award is appropriate for the time that counsel for Joyce Schweickert and Jeffrey Keane incurred in opposing the subpoenas. Counsel shall file and serve a fee application within ten (10) days of the entry of this Order if he wishes to pursue such an award.

**CONCLUSION**

For the above-stated reasons, the Court hereby finds and ORDERS as follows:

(1) Motion for Judgment on the Pleadings by Defendants Chad and Elizabeth Rudkin (Dkt. # 27) is GRANTED. Each of Plaintiff's claims against the Rudkins shall be DISMISSED with prejudice.

(2) Plaintiff's Motion for Leave to Amend (Dkt. # 29) is DENIED.

(3) Plaintiff's Motion to Compel Defendants to Respond to Plaintiff's Requests for Discovery (Dkt. # 30) is STRICKEN as MOOT. No fees or costs shall be awarded.

(4) Motion to Compel Discovery by Defendant Du Wors (Dkt. # 54) is DENIED. No fees or costs shall be awarded.

(5) Plaintiff's Motion to Compel Responses to Interrogatories and Requests for Production from Defendant John Du Wors (Dkt. # 60) is DENIED as MOOT. Plaintiff shall be awarded her attorney fees and costs in the amount of $1,195.46 for having to bring this Motion.

(6) Defendant Du Wors' Motion for Leave to Complete Two Discovery Events Beyond the Discovery Cutoff (Dkt. # 61) is GRANTED in part and DENIED in part. The Court modifies the Scheduling Order for the sole purpose of permitting the deposition by Defendants of Stephen and Joyce Schweickert.

(7) Motions to Quash by Plaintiff and by Joyce Schweickert and Jeffrey Keane (Dkt. ## 63, 67) are GRANTED. The Court QUASHES the subpoenas issued by counsel for Defendant Du Wors to Apple and Google. Plaintiff shall be awarded her attorney fees and costs in the amount of $1200 for time incurred opposing the unduly burdensome and unwarranted subpoenas. The Court finds that a similar award is appropriate for the time that counsel for Joyce Schweickert and Jeffrey Keane incurred in opposing the subpoenas. Counsel shall file and serve a fee application within ten (10) days of the entry of this Order if he wishes to purse such an award.

DATED this 3 day of December 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS - 22